UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LARRY W. PREWITT, SR., | § | |
| | § | |
| Plaintiff, | § | Cv. No. SA:12-CV-582-DAE |
| | § | |
| vs. | § | |
| | § | |
| CONTINENTAL AUTOMOTIVE, | § | |
| | § | |
| Defendant. | § | |

ORDER: (1) GRANTING DEFENDANT'S MOTION FOR PARTIAL
DISMISSAL; (2) DENYING AS MOOT DEFENDANT'S MOTION FOR MORE
DEFINITE STATEMENT

On February 25, 2013, the Court heard oral argument on Defendant

Continental Automotive's Motion for Partial Dismissal and Motion for More

Definite Statement (doc. # 7).  Adam Poncio, Esq., appeared at the hearing on

behalf of Plaintiff Larry W. Prewitt, Sr.  Santiago Alaniz, Esq., appeared on behalf

of Defendant Continental Automotive.  After considering Defendant's Motions and

the supporting and opposing memoranda, and in light of the arguments presented at

the hearing, the Court **GRANTS** Defendant's Motion for Partial Dismissal and

**DENIES AS MOOT** Defendant's Motion for More Definite Statement.

BACKGROUND

For the purposes of a motion to dismiss and a motion for more

definite statement, the Court accepts all well-pleaded allegations in the Complaint

1

as true.  According to the Complaint, Plaintiff Larry W. Prewitt, Sr. ("Plaintiff")

began working for Motorola in November of 1999.  (Doc. # 1 ¶ 5.)   In 2006,

Defendant acquired Motorola's automotive business division in Seguin, Texas, and

Plaintiff continued to work there.  (Id.; doc. #7 at 3.)  Sometime between March

13, 2009, and May 11, 2009, Plaintiff filed a Discrimination Charge ("Charge 1")

based on National Origin, Age, and Disability with the Equal Opportunity

Employment Commission ("EEOC").  (Id. ¶ 6; EEOC No. 846-2009-22464.)[1]

Shortly thereafter, in "late Spring 2009," Plaintiff went on medical leave due to a

back injury and shoulder surgery, returning to work in March or April of 2010.[2]

(Id. ¶ 7.)  At the time he returned to work, Plaintiff suffered from an unspecified

disability.  (Id.)

        In order to accommodate Plaintiff's disability, Defendant assigned

Plaintiff to the sandblasting department.  (Id. ¶ 8.)  This position required Plaintiff

to work twelve-hour shifts in a sitting position with his arms in rubber sleeves.

(Id.)  One hand held a part for cleaning, and the other held a high-pressure hose

that sprayed very fine glass beads.  (Id.)  Plaintiff alleges that this new position

"added additional stress to Plaintiff's lower back and shoulders."  (Id.)  In addition,

---

[1] Plaintiff has not produced a copy of this Charge.
[2] Plaintiff states that he returned to work in March of 2010.  (Doc. # 1 ¶ 7.)
However, he also states that April 19, 2010, was "approximately six (6) days" after
he began working in the sandblasting department (id. ¶ 11), so it is unclear exactly
when Plaintiff returned to work.

the sandblasting position required employees to work around fiberglass, fiberglass

dust, and a variety of other chemicals, causing breathing problems for Plaintiff.

(Id. ¶ 9.)  Defendant denied Plaintiff's request for a face mask and then required

Plaintiff to remove the mask that he purchased and wore to work.  (Id.)

On April 18, 2010, in response to this incident, Plaintiff filed with the

U.S. Department of Labor, Occupational Safety and Health Administration

("OSHA") a report alleging safety or health hazards in the sandblasting area.

(Id. ¶ 10.)  Following Plaintiff's complaint, Defendant provided Plaintiff with

protective equipment.  (Id.)  Then, on April 19, 2010, approximately six days after

Plaintiff was assigned to the sandblasting department, Plaintiff "received a written

counseling regarding his poor performance and inability to reach the goals of the

sandblasting position."  (Id. ¶ 11.)

On four days over the next two months—April 24, April 25, May 26,

and May 27 of 2010—Defendant represented that there was "not enough work to

be done," and Plaintiff was sent home.  (Id. ¶ 12.)  Defendant told Plaintiff that he

could use his paid time off ("PTO") or go without pay.  (Id.)  According to the

Complaint, Defendant's attendance policy permitted employees to use up to forty

hours of PTO for unplanned absences; once this PTO was consumed, however, any

time that an employee was away from work for more than two hours was counted

as an absence, and a "progressive discipline plan" was initiated.  (Id.)  Plaintiff

used a PTO day on each of the four days that he was sent home.  (Id.)  The

Complaint alleges that on those days "Plaintiff's co-workers were given other job

assignments akin to the sandblasting position and were not sent home . . . ."  (Id.)

On July 12, 2010, Plaintiff received a verbal warning for being absent

from work on July 8, 2010, without the PTO to cover those hours.  (Id. ¶ 13.)  On

July 23, 2010, Plaintiff filed a Retaliation Charge ("Charge 2") with the EEOC.

(Id. ¶ 14; EEOC Charge No. 451-2010-01235.)  Plaintiff attached a copy of this

Charge to his Response to Defendant's Motion to Dismiss.  (Doc. # 8 Ex. C.)

On August 10, 2010, Plaintiff received a written warning regarding

his absence from work—again without the PTO to cover the absence—on July 16,

2010.  (Id. ¶ 15.)

On August 25, 2010, the EEOC mailed and emailed Plaintiff a letter

informing him of its preliminary determination to dismiss Charge 1.  (Id. ¶ 16.)

This letter informed Plaintiff that the dismissal notice he would soon receive

"[would] represent a final determination by the [EEOC] and [would] describe [his]

right to pursue the matter by filing a lawsuit in federal court within 90 days of [his]

receipt of the dismissal notice."  (Id. Ex. A at 2.)  Plaintiff received that dismissal

notice and a "Notice of Suit Rights" for Charge 1 on approximately September 10,

2010.  (Doc. # 1 ¶ 17.)

On September 15, 2010, Plaintiff received a second written warning for being absent on September 7, 2010, and not having the PTO to cover those hours.  (Id. ¶ 18.)

On approximately June 21, 2011, Plaintiff filed an internal sexual discrimination and harassment complaint against a female coworker.  (Id. ¶ 19.) Sometime thereafter, Plaintiff was moved to another section of the plant.  (Id.)

On June 30, 2011, the EEOC issued a "No Findings" with regard to Charge 2, indicating that it was "unable to conclude that the information obtained establishe[d] violations of the statutes."  (Doc. # 1 Ex. B.)  This same document provided Plaintiff with a "Notice of Suit Rights" for Charge 2, again indicating that Plaintiff had ninety days following his receipt of the Notice to file a civil action based on the incidents alleged in his Charge.  (Id.)

On July 15, 2011, Plaintiff received a "written counseling" because a former female co-worker had filed a sexual harassment case against him. (Doc. # 1 ¶ 20.)  According to the Complaint, Defendant concluded that the conduct had occurred but "refused to inform Plaintiff of when the complaint was made, when the alleged harassment occurred[,] or who in management was investigating the complaint."  (Id. ¶ 21.)

On July 19, 2011, Plaintiff filed a third Charge with the EEOC, this one alleging Retaliation and Discrimination Based on National Origin ("Charge

3"). (Id. ¶ 22; EEOC Charge No. 451-2011-01541.) Plaintiff alleges that he amended this Charge to add violations of the Americans with Disabilities Act ("ADA") (doc. # 1 ¶ 22), and he attaches that amendment as an attachment to his Response to Defendant's Motion to Dismiss. (Doc. # 8 Ex. A at 2.)

On August 17, 2011, Plaintiff was terminated. (Id. ¶ 23.) The Complaint alleges that Defendant terminated Plaintiff because he was absent on August 9, 2011, and did not have the PTO to cover those hours. (Id.) On March 15, 2012, Plaintiff received from the EEOC a "Notice of Suit Rights" for Charge 3 that was dated March 13, 2012. (Id. ¶  24.) Again, this Notice informed Plaintiff that he had ninety days to file a civil action.

On June 13, 2012, Plaintiff brought suit against Defendant in the Western District of Texas. (Doc. # 1-1.) The Complaint alleges that Defendant, through its officers and agents, harassed Plaintiff, retaliated against him, and discriminated against him based on national origin, race, sex, and disability in violation of Title VII, the ADA, and the Texas Labor Code. (Doc. # 1 ¶ 25.) Plaintiff seeks (1) "lost wages, past and future"; (2) damages for mental anguish and emotional distress; (3) compensatory damages and punitive damages; and (4) attorneys' fees, expert fees, and costs. (Id. ¶ 29.)

On August 31, 2012, Defendant filed the Motion for Partial Dismissal and the Motion for More Definite Statement that are now before the Court.

(Doc. # 7.)  On September 14, 2012, Plaintiff filed a Response to Defendant's

Motion (doc. # 8); Defendant did not file a Reply.  For the reasons that follow, the

Court grants Defendant's Motion for Partial Dismissal and denies as moot

Defendant's Motion for More Definite Statement.

<u>LEGAL STANDARDS</u>

I.      <u>Motion to Dismiss For Failure to State a Claim Under Rule 12(b)(6)</u>

        Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a

complaint for "failure to state a claim upon which relief can be granted."  Review

is limited to the contents of the complaint and matters properly subject to judicial

notice.  See <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322

(2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court

accepts 'all well-pleaded facts as true, viewing them in the light most favorable to

the plaintiff.'"  <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir.

2007) (quoting <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d

464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the

plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Twombly, 550 U.S. at 558 (citation omitted).  However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

II.     Motion for More Definite Statement Under Rule 12(e)

        Rule 8(a) of the Federal Rules of Civil Procedure requires that a

pleading stating a claim for relief contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "If a pleading

fails to specify the allegations in a manner that provides sufficient notice, a

defendant can move for a more definite statement under [Federal Rule of Civil

Procedure] 12(e) before responding."  Swierkiewicz v. Sorema N.A., 534 U.S. 506,

514 (2002).  Rule 12(e) provides that "[a] party may move for a more definite

statement of a pleading to which a responsive pleading is allowed but which is so

vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R.

Civ. P. 12(e).

        The pleading standard set out in Rule 8(a) is a liberal one; it does not

require a plaintiff to plead with specificity the facts giving rise to his or her claim.

See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (noting that under Rule 8(a)'s

notice pleading standard, "[s]pecific facts are not necessary").  As a result, Rule

12(e) motions are generally disfavored and are used "to provide a remedy only for

an unintelligible pleading rather than a correction for lack of detail."  Davenport v.

Rodriguez, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001); see also Mitchell v. E-Z

Way Towers, Inc., 269 F.2d 126, 132 (5th Cir. 1959) ("In view of the great

liberality of [Federal Rule of Civil Procedure 8], permitting notice pleading, it is

clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss.").  Thus, a motion for a more definite statement will be granted only when a pleading is so "barren of specifics," United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 690 n.15 (1973), that the opposing party is unable to respond.

DISCUSSION

I.      Motion for Partial Dismissal for Failure to State a Claim

Defendant, in its Motion for Partial Dismissal for Failure to State a Claim, argues that, to the extent that Plaintiff's claims arise out of the incidents about which he complained to the EEOC in Charges 1 and 2, they are time-barred. (Doc. # 7 at 2.)  Defendant is correct.  As explained below, except to the extent that Charges 1 and 2 are the basis for a retaliation claim, any claims arising from the incidents alleged therein are time-barred.

Plaintiff, in his response to Defendant's Motion, clarifies that his "claims are brought solely based on the allegations referenced and included as part of his Charge 3, Charge No. 451-2011-01541 . . . ."  (Doc. # 8 ¶ 4.)  In an abundance of caution, however, and to provide the parties with a clear understanding of which claims survive Defendant's Motion to Dismiss, the Court

will address all three Charges and the extent to which Plaintiff may use them in crafting his Complaint.

A.   Exhaustion of Administrative Remedies and the 90-Day Limitations Period

A plaintiff in an employment discrimination case must exhaust administrative remedies before pursuing claims in federal court.  "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue."  Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002) (citing Dao v. Auchan Hypermarket, 96 F.3d 787, 788–89 (5th Cir. 1996).  "Although filing of an EEOC charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.'"  Taylor, 296 F.3d at 379 (quoting Dao, 96 F.3d at 789).

Under Title VII, claimants have ninety days after receiving a right-to-sue notice from the EEOC to file a civil action.  Nilsen v. City of Moss Point, Miss., 674 F.2d 379, 381 (5th Cir. 1982) (citing 42 U.S.C. § 2000e-5(f)(1) (1994)).  The ninety-day limitation period is strictly construed.  See Taylor, 296 F.3d at 380 (affirming the district court's dismissal of an employment discrimination claim "because [plaintiff] did not file his complaint until . . . one day beyond the ninety-day period"); Ringgold v. Nat'l Maint. Corp., 796 F.2d 769, 770 (5th Cir. 1986) ("[Plaintiff's] suit, filed 92 days after delivery to his designated

counsel of the right-to-sue letter, was untimely.").  A court should dismiss claims

brought outside of this limitations period, because Congress "clearly intended to

encourage the prompt processing of all charges of employment discrimination" and

to protect employers from defending claims arising from employment decisions

that are long past.  Mohasco Corp. v. Silver, 447 U.S. 807, 825 (1980).

       1.  Claims Based on the Allegations in Charges 1 and 2 Are Time-Barred

          i.  EEOC Charge 1

       As Plaintiff states in the Complaint, he filed Charge 1 with the EEOC

sometime "between March 13, 2009, and May 11, 2009."  (Doc. # 1 ¶¶ 6, 30;

EEOC No. 846-2009-22464.)  Plaintiff has not provided a copy of this Charge, and

the Complaint does not describe its factual basis; it states only that the Charge was

for "Discrimination . . . based on National Origin, Age, and Disability . . . ."

(Id. ¶ 6.)  The Complaint also states that Plaintiff received from the EEOC a

"Dismissal and Notice of Rights" regarding Charge 1 on September 10, 2010.

(Id. ¶ 30.)  Because the ninety-day limitations period begins running on the day

that a complainant receives his right-to-sue letter, see Bunch v. Bullard, 795 F.2d

384, 387–88 (5th Cir. 1986), Plaintiff could have filed suit in federal district court

based on the occurrences described in Charge 1 on any day up to and including

December 9, 2010.  However, Plaintiff did not file suit within that time period; he

filed this action on June 13, 2012—approximately a year and a half after the limitations period expired.  (See doc. # 1-1.)

Plaintiff has alleged no facts to support a finding that this limitations period should be equitably tolled.  Compare Granger v. Aaron's, Inc., 636 F.3d 708 (5th Cir. 2011) (tolling the limitations period under Title VII where plaintiffs "were diligent about pursuing their rights and their attorney diligently and repeatedly followed up on their claims within the [limitations] period, notwithstanding his filing in the wrong forum"), and Rowe v. Sullivan, 967 F.2d 182, 192 (5th Cir. 1992) ("[E]quitable tolling may apply where the claimant has vigorously pursued his action, but has inadvertently missed deadlines due to his or her lack of sophistication with the procedural requirements of Title VII claims."), with Harris v. Boyd Tunica, Inc., 628 F.3d 237, 240 (5th Cir. 2010) (affirming the district court's refusal to equitably toll the ninety-day filing period where plaintiff's attorney had inadvertently mismarked his calendar).  Accordingly, any claims arising from the incidents described in the first Charge Plaintiff filed with the EEOC (Charge 1) are dismissed as time-barred.  See Taylor, 296 F.3d at 381 (affirming dismissal of Title VII plaintiff's complaint filed ninety-one days after receipt of right-to-sue letter).  Nevertheless, the Court may consider the fact that Plaintiff filed this and other charges with the EEOC as "background evidence" in support of any of Plaintiff's timely employment discrimination claims.  Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see also Lopez v. Kempthorne, 684 F. Supp. 2d 827, 852 (S.D. Tex. 2010) (acknowledging that a court may "consider time-barred acts occurring outside the limitations period insofar as they are relevant to a Defendant's motivation").

ii. EEOC Charge 2

Claims arising from the incidents giving rise to the second Charge that Plaintiff filed with the EEOC—if indeed there are any—must be dismissed for the same reason.  Again, Plaintiff states in the Complaint that he filed his second Charge with the EEOC on July 23, 2010, and that he received his right-to-sue letter on June 30, 2011.  (Doc. # 1 ¶ 30.)  Plaintiff claims—although, again, he did not attach a copy of the Charge to the Complaint—that Charge 2 alleged retaliation for participating in a protected activity in violation of the ADA.  (Doc. # 1 ¶ 14; EEOC Charge No. 451-2010-01235.)  Allowing for ninety days following Plaintiff's receipt of his right-to-sue letter, Plaintiff could have brought suit based on the facts alleged in Charge 2 on or before September 28, 2011.  Because Plaintiff filed this suit on June 13, 2012, and because Plaintiff has alleged no facts suggesting that the ninety-day limitations period should be equitably tolled, any claims arising from the incidents that form the basis of Charge 2 are dismissed.

iii. <u>EEOC Charge 3</u>

On July 23, 2010, Plaintiff filed Charge 3 with the EEOC.  (<u>Id.</u> ¶ 14; EEOC Charge No. 451-2011-01541.)  Plaintiff claims that this Charge, which Plaintiff attached to his Response to Defendant's Motion to Dismiss (<u>see</u> doc. # 8 Ex. A), alleged retaliation, discrimination based on national origin, and, after it was amended, violations of the ADA.  (<u>Id.</u>; doc. # 1 ¶ 22.)  Plaintiff received his right-to-sue letter for Charge 3 (doc. # 1 Ex. C) on March 15, 2012.  (<u>Id.</u> ¶ 30.)  Because Plaintiff filed the instant civil action on June 13, 2012, less than ninety days after he received his right-to-sue letter, any claims arising from the facts alleged in Charge 3—at least insofar as they do not repeat time-barred claims first brought in Charges 1 and 2—are not time-barred.

2. <u>Charge 3 Did Not Exhaust Administrative Remedies with Regard to All Claims in the Complaint</u>

As described above, (1) a plaintiff <u>must</u> exhaust administrative remedies by filing a charge with the EEOC before bringing suit against an employer, and (2) any claims arising from the facts alleged in EEOC Charges 1 and 2 are time-barred.  Accordingly, if any of Plaintiff's claims are to survive a motion to dismiss, they must have been alleged in Charge 3—the only EEOC charge for which Plaintiff's claims are not time-barred.  Plaintiff, recognizing as much, clarifies in his Response to Defendant's Motion that his "claims are brought

solely based on the allegations referenced and included as part of his Charge

3 . . . ." (Doc. # 8 ¶ 4.) Furthermore, the Court is cognizant of the need to police

the claims brought in Charge 3 to ensure that Plaintiff is not attempting to revive

claims that are time-barred; the ninety-day limitations period would be

meaningless if potential Title VII plaintiffs could evade it simply by filing a new

charge of discrimination.  See Soso Liang Lo v. Pan Am. World Airways, Inc., 787

F.2d 827, 828 (2d Cir. 1986) ("[T]he time limitations of 42 U.S.C. § 2000e-5(f)(1)

would be meaningless . . . [if] potential Title VII plaintiffs could evade those

requirements simply by seeking additional Notices of Right to Sue whenever they

pleased.").

        The Complaint alleges that Defendant, through its officers and agents,

harassed Plaintiff, retaliated against him, and discriminated against him based on

national origin, race, sex, and disability in violation of Title VII, the ADA, and the

Texas Labor Code.  (Doc. # 1 ¶ 25.)  However, due to the exhaustion requirement,

this Court may not entertain any of these claims unless they fall within the scope of

the EEOC investigation that could "reasonably be expected to grow out of"

Charge 3.  McClain v. Lufkin Indus., Inc., 519 F.3d 264, 275 (5th Cir. 2008).

        To determine the scope of the EEOC investigation, a court must

"engage in fact-intensive analysis of the statement given by the plaintiff in the

administrative charge, and look slightly beyond its four corners, to its substance

rather than its label." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006).

Again, the court must make this determination "not solely by the scope of the

administrative charge itself, but by the scope of the EEOC investigation which 'can

reasonably be expected to grow out of the charge of discrimination." Id., 448 F.3d

at 789 (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th

Cir.1970)). In other words, the court must determine whether the claims in the

complaint are "'like or related' to the claims in the charge." Memon v. Deloitte

Consulting, LLP, 779 F. Supp. 2d 619, 635 (S.D. Tex. 2011) (citing McClain, 519

F.3d at 273). This is because "the primary purpose of Title VII is to trigger the

investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve

non-judicial resolution of employment discrimination claims." McClain, 519 F.3d

at 273 (quoting Pacheco, 448 F.3d at 788–89) (alteration in original). While an

EEOC charge should be liberally construed, "[c]ourts should not condone lawsuits

that exceed the scope of EEOC exhaustion, because doing so would thwart the

administrative process and peremptorily substitute litigation for conciliation." Id.

at 273.

        Plaintiff did not attach a copy of Charge 3 (EEOC Charge No.

451-2011-01541) to the Complaint, but he did attach a copy to his Response to

Defendant's Motion for Partial Dismissal and Motion for More Definite Statement.

(Doc. # 8 Ex. A.) While a court's Rule 12(b)(6) analysis is generally confined to a

review of the complaint and its proper attachments, <u>Fin. Acquisition Partners v.</u>

<u>Blackwell</u>, 440 F.3d 278, 286 (5th Cir. 2006), a court may also consider

attachments that were explicitly referenced in the complaint, acknowledged in the

answer, and attached in opposition to a motion to dismiss.  <u>Walch v. Adjutant</u>

<u>General's Dep't of Tex.</u>, 533 F.3d 289, 293–94 (5th Cir. 2008); <u>see also</u> <u>Thornton</u>

<u>v. Micrografx, Inc.</u>, 878 F. Supp. 931, 933 (N.D. Tex. 1995) ("The complaint is

deemed to include any document attached to it as an exhibit or any document

incorporated in it by reference.").  In this case, the Complaint repeatedly refers to

Charge 3; Defendant, in its Answer, "admits that it was informed by the EEOC that

Plaintiff filed his third Charge" and that "the EEOC mailed Plaintiff the 'Dismissal

and Notice of Rights' . . . to the third Charge on March 13, 2012" (doc. # 15 ¶¶ 22,

30); and Plaintiff attached a copy of Charge 3 and the right-to-sue letter to his

Response in opposition to Defendant's Motion for Partial Dismissal (doc. # 8

Ex. A).  Accordingly, it is proper for the Court to consider, for the purpose of

Defendant's Motion for Partial Dismissal, the EEOC documents Plaintiff attached

to his Response.

      Moreover, a court may take judicial notice of EEOC documents as a

matter of public record when deciding a Rule 12(b)(6) motion.  <u>Cinel v. Connick</u>,

15 F.3d 1338, 1343 n.6 (5th Cir. 1994); <u>see also</u> <u>King v. Life Sch.</u>, 809 F. Supp. 2d

572, 579 n.1 (N.D. Tex. 2011) ("Even though the EEOC charge is a matter outside

18

the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested."); Gallo v. Bd. of Regents of Univ. of California, 916 F. Supp. 1005, 1007 (S.D. Cal. 1995) ("[T]he Court may consider both the EEOC right to sue letter and the EEOC charge, either as referenced in the complaint or as public records subject to judicial notice.").  Any reference to EEOC documents, therefore, does not convert Defendant's 12(b)(6) motion into a motion for summary judgment.  See Funk v. Stryker Corp., 631 F.3d 777, 780 (5th Cir. 2011) ("[T]he district court's application of judicial notice [to public records] did not transform the motion to dismiss into a motion for summary judgment.").  Accordingly, this Court takes judicial notice of Charge 3 and its accompanying right-to-sue notice—not for the truth of the matters alleged therein, but merely for purposes of determining which claims were alleged in the EEOC proceeding and, accordingly, for which claims Plaintiff has exhausted his administrative remedies.

In Charge 3, in the box labeled "Discrimination Based On," Plaintiff checked "National Origin" and "Retaliation."  In the box labeled "The Particulars Are," Plaintiff wrote:

> On or about June 21, 2011, I filed a sexual discrimination complaint with my employer against Jessica Menchaca, Hispanic female.  Nothing has been said about the investigation and the witness I provided has been questioned twice about what she saw Ms. Menchaca doing.  After complaining I was moved to another section and Ms. Menchaca was not.

A male Hispanic had a sexual harassment charge filed against him and he has not been disciplined.

On July 15, 2011, I was given a Performance and Development Plan (DPD) [sic] because a female employee that no longer works there had filed a sexual harassment case against me.  The ex-employee had stated that I asked her to touch me.  I did not sexually harass the ex-employee or ask her to touch me, but the employer stated that their investigation concluded the conduct occurred.  My employer would not say who conducted the investigation, how it was conducted, who was interviewed, or if it was done after the employee had already quit or got terminated.

I believe that I am being retaliated against for my previous EEOC charges and my recent complaint of sexual harassment and am being treated disparately because of my race, White[,] in violation of Title VII of the Civil Rights Act of 1964 as amended.

(Doc. # 8 Ex. A at 1.)  This Charge is dated July 19, 2011.  (Id.)

On August 25, 2011, following his termination, Plaintiff amended

Charge 3, stating:

On August 17, 2011, I believe that I was discharged for having filed a charge of discrimination (451-2011-01541) against this Company.

(Doc. # 8 Ex. A at 3.)

Plaintiff amended Charge 3 for a second time on September 2, 2011,

stating:

In addition to my present charge, I had previously filed two charges related to disability discrimination.  I also believe my present termination and the retaliation I suffered were because of my present charges and the prior charges I filed, which is a violation of the Americans with Disabilities Act, as amended[,] and the Texas Labor Code.

(Id. at 2.)  Plaintiff received a right-to-sue letter based on Charge 3 on March 15, 2012.  (Doc. # 8 Ex. B.)

The Complaint alleges that Defendant, through its officers and agents, harassed Plaintiff, retaliated against him, and discriminated against him based on national origin, race, sex, and disability in violation of Title VII, the ADA, and the Texas Labor Code.  (Doc. # 1 ¶ 25.)  From the text of Charge 3, as amended, and construing such Charge liberally "to protect the employee's rights and statutory remedies," Fed. Exp. Corp. v. Holowecki, 552 U.S. 389 (2008), the Court concludes, for the reasons that follow, that Plaintiff has exhausted his administrative remedies with regard to his claims for (1) discrimination based on race and (2) retaliation; and that Plaintiff has failed to exhaust his administrative remedies with regard to his remaining claims.

i.  Exhausted Claims

a.  Race-based Discrimination

Plaintiff, who self-identifies as white, claims that he filed an internal sexual discrimination complaint against a Hispanic coworker named Michelle Menchaca and that Menchaca was not disciplined.  (Doc. # 8 Ex. A at 1.)  Instead, following his complaint, Plaintiff was moved to another section.  (Id.)  Plaintiff also alleges that "[a] male Hispanic had a sexual harassment charge filed against him and he has not been disciplined."  (Id.)   Finally, Plaintiff alleges that

Defendant informed him of a sexual harassment case filed against him; that Defendant concluded, without justification, that Plaintiff had committed the alleged acts; and that Defendant refused to disclose to Plaintiff the details of the investigation or to permit Plaintiff to defend himself.  (Id.)

Construing the Charge liberally in favor of Plaintiff, the Court concludes that Plaintiff did exhaust his administrative remedies with regard to a claim for race-based discrimination.  Again, the Court must look to "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination. " Pacheco, 448 F.3d at 789 (quoting Sanchez, 431 F.2d at 466).  To the extent that the Complaint alleges race-based discrimination arising from the incidents described in the previous paragraph, therefore, that claim is "like or related" to a claim in Charge 3 and, accordingly, is an "exhausted" claim appropriately before this Court.  McClain, 519 F.3d at 273.

While Plaintiff did not check the box indicating that the Charge alleged discrimination based on "Race," a court must "look slightly beyond [the charge's] four corners, to its substance rather than its label." Pacheco, 448 F.3d at 789.  Plaintiff checked, instead, the box labeled "National Origin"; but the Court finds no allegations in the Charge to support a finding that Plaintiff actually brought a claim for discrimination based on his or his ancestors' nation of origin (which the Court assumes, absent information to the contrary, is the United States).

Plaintiff's failure to check the correct box ("Race") does not doom his Charge, however.  Again, the scope of an EEOC charge should be construed liberally, especially when drafted by a pro se plaintiff.  See Pacheco, 448 F.3d at 788 ("[B]ecause 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally.") (quoting Sanchez, 431 F.2d at 463).  Accordingly, the Court concludes that Plaintiff exhausted administrative remedies with regard to a claim for race-based discrimination arising from the above-described incidents. Whether a Plaintiff has exhausted the administrative remedies with regard to a claim is, however, a separate inquiry from whether he has stated a claim for which relief may be granted—an inquiry the Court addresses below.

b.  Retaliation

In Charge 3, Plaintiff alleges that Defendant ignored his sexual harassment claims and that he himself was wrongfully accused of sexual harassment in retaliation for filing Charges 1 and 2 with the EEOC.  (Doc. # 8 Ex. A at 1.)  In Plaintiff's first amendment to Charge 3, he alleges that he was later terminated in retaliation for filing Charge 3.  (Doc. # 8 Ex. A at 3.)  Plaintiff's second amendment to Charge 3 expands on the basis for retaliation, alleging that Defendant terminated Plaintiff not only retaliation for filing Charge 3 with the EEOC but also in retaliation for filing Charges 1 and 2.  (Id. at 2.)

Because Plaintiff, in Charge 3, clearly alleged that Defendant retaliated against him based on his filing charges with the EEOC, the Court concludes that Plaintiff exhausted his administrative remedies with regard to those claims.  Again, however, this is a separate inquiry from whether Plaintiff has stated a claim for which relief may be granted, which the Court addresses in Part I.B.

c.  <u>Claims Under Texas Law</u>

Defendant, in its Motion for Partial Dismissal, argues that any claims under the Texas Labor Code must be dismissed because Plaintiff has "fail[ed] to offer any proof that he timely filed his lawsuit within 60 days of his receipt of a right-to-sue letter from the Texas Workforce Commission [("TWC")] as required by Texas Labor Code § 21.254."  (Doc. # 7 at 9–10.)  In other words, Defendant argues that Plaintiff has failed to exhaust his state administrative remedies with regard to claims brought under the Texas Labor Code.

Plaintiff counters that "any claim filed with the EEOC is considered dual filed with the state [TWC] for claims arising under the Texas Labor Code or Texas Commission on Human Rights Act."  (Doc. # 8 ¶ 27.)  While Plaintiff does not cite any authority in support of this contention, the Court concludes that, at least in this case, Plaintiff did exhaust his state administrative remedies by simultaneously filing Charge 3 with the Texas Workforce Commission.

In <u>Burgmann Seals America, Inc. v. Cadenhead</u>, the Court of Appeals of Texas held that a plaintiff had exhausted his state administrative remedies where he had, on his EEOC charge, "inserted 'Texas Commission on Human Rights' [("TCHR")] as the state agency and checked the box that stated, 'I want this charge filed with both the EEOC and the State or local Agency, if any.'" 135 S.W.3d 854, 857 (Tex. App. 2004). "We hold," stated that court, "that providing the name of the TCHR and checking the box for simultaneous filing is the equivalent of filing with the TCHR." <u>Id.</u> Accordingly, the court held that the plaintiff was "entitled to file suit 181 days after filing his complaint with the TCHR . . . ." <u>Id.</u>

In this case, Plaintiff included on Charge 3, on the line labeled "State or local Agency, if any," the name of the equivalent state agency, the "Texas Workforce Commission Civil Rights Division."[3] (Doc. # 8 Ex. A.) Plaintiff signed Charge 3 at the bottom under a statement that said, "I want this charge filed with both the EEOC and the State or local Agency, if any." (<u>Id.</u>) Accordingly, the Court concludes that Plaintiff did simultaneously file Charge 3 both with the EEOC and with the Texas Workforce Commission Civil Rights Division.

Moreover, in order to exhaust administrative remedies under Texas law, a plaintiff need not actually request or receive a right-to-sue letter"; "it is the

---

[3] Effective March 1, 2004, the Texas Workforce Commission, Civil Rights Division, assumed the powers and duties of the TCHR. <u>Little v. Texas Dep't of Crim. Justice</u>, 148 S.W.3d 374, 377–78 (Tex. 2004).

mere entitlement to the letter that exhausts the administrative process and ends the [Texas Workforce] Commission's exclusive jurisdiction." City of Houston v. Fletcher, 63 S.W.3d 920, 923 (Tex. App.—Houston [14 Dist.] 2002) (citing Stinnett v. Williamson County Sheriff's Dep't, 858 S.W.2d 573, 577 (Tex. App.— Austin 1993, writ denied).  A plaintiff is entitled to a right-to-sue letter from the TWC within 180 days of filing a complaint, but he need not request one before bringing suit if 180 days have passed and the letter has not yet come.  Id. at 921. Accordingly, because Plaintiff requested that Charge 3 be simultaneously filed with the TWC (doc. # 8 at 8), and because more than 180 days have passed since then, Plaintiff has exhausted his administrative remedies under Texas law.  To the extent that Charge 3 alleges violations of Texas law, therefore, Plaintiff may bring claims that are like or related to those allegations in this civil action.

#### ii. Unexhausted Claims

A plain reading of Charge 3 and its amendments reveals that Plaintiff has failed to exhaust his administrative remedies against Defendant with regard to any other claims.  In the Complaint, Plaintiff alleges that Defendant, through its officers and agents, harassed Plaintiff, retaliated against him, and discriminated against him based on national origin, race, sex, and disability in violation of Title VII, the ADA, and the Texas Labor Code.  (Doc. # 1 ¶ 25.)  However, the Court can find no language in Charge 3 or its amendments that would have put

26

Defendant or the EEOC on notice that Plaintiff was alleging claims based on national origin, sex, or disability.

First, for the reasons given above, the Court finds that while Plaintiff checked the box marked "National Origin" on Charge 3, in fact his allegations were based on race discrimination.  (See supra pt. I.A.2.i.a.)  Second, even the "Facts" section of the Complaint does not describe Charge 3 as containing allegations of sex discrimination (see doc. # 1 ¶ 22 (describing Charge 3 as complaining of retaliation, discrimination based on national origin, and—after it was amended—violations of the ADA)), and Plaintiff's Response to Defendant's Motion for Partial Dismissal explains that "[t]he allegations related to sex discrimination are raised only because [Plaintiff] clearly alleges that he has suffered retaliation based in part on prior claims."  (Doc. # 8 ¶ 5.)  Thus, even Plaintiff admits that he did not bring a sex discrimination claim in Charge 3.

Finally, while Plaintiff's second amendment to Charge 3 did mention the ADA and the Texas Labor Code, it did so only with regard to the allegation that Defendant violated those laws when it terminated him in retaliation for engaging in the protected activity of filing an EEOC charge.  (See doc. # 8 Ex. A at 2 ("I also believe my present termination and the retaliation I suffered were because of my present charges and the prior charges I filed, which is a violation of the Americans with Disabilities Act, as amended[,] and the Texas

Labor Code.") (emphasis added).)  Neither Charge 3 nor its amendments alleged

retaliation in response to a request for reasonable accommodation of a disability or

any other violation based on disability.

Because "discrimination and retaliation claims are distinct, . . .

alleging one and not the other in an EEO charge does not exhaust a plaintiff's

remedies as to the one not included."  Lopez v. Kempthorne, 684 F. Supp. 2d 827,

852 (citing Bouvier v. Northrup Grumman Ship Systems, Inc., 350 F. App'x. 917,

921–22 (5th Cir. 2009)).  Accordingly, to the extent that the Complaint brings

claims for discrimination based on national origin, sex, or disability, those

allegations exceed the scope of Charge 3.  See Stevenson v. Bost, No.

5:10-CV-487-FL, 2011 WL 2181735, at *7 (E.D.N.C. June 3, 2011) (holding that

plaintiff failed to exhaust administrative remedies with respect to her retaliation

claim although she checked the corresponding box, because the factual allegations

made no mention of the retaliation later complained of); McLeod v. Lowe's Home

Improvement, No. 1:09-CV-834, 2010 WL 4366901, at *5 (N.D.N.Y. Oct. 28,

2010) (finding failure to exhaust administrative remedies with respect to claim of

retaliation for opposing disability discrimination where administrative charge

alleged only retaliation for opposing racial discrimination).  Since this Court's

inquiry is limited to claims that are "like or related to" allegations first raised in the

administrative process, see McClain, 519 F.3d at 275, any claims for

discrimination based on national origin, sex, or disability are dismissed.

   B. Has Plaintiff Stated a Claim?

        Plaintiff cannot bring suit based on claims for which he did not

exhaust his administrative remedies.  However, the mere fact that Plaintiff has

exhausted administrative remedies with regard to some claims in Charge 3 does

not mean that the Complaint states a claim sufficient to survive a Rule 12(b)(6)

motion to dismiss.  While an EEOC charge is construed broadly for purposes of

exhaustion analysis, the Complaint must still plead "enough facts to state a claim

to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  For the reasons

that follow, the Court concludes that Plaintiff has (1) failed to state a claim for

race-based discrimination but (2) has pleaded facts sufficient to state a claim for

retaliation.

   1.  Race-Based Discrimination

        Title VII and the Texas Commission on Human Rights Act

("TCHRA") make it unlawful for an employer to discriminate against an individual

with respect to his compensation, terms, conditions, or privileges of employment

based on race.  42 U.S.C. § 2000e–2; Tex. Lab. Code § 21.051.  The analysis of a

claim under the TCHRA is identical to that under Title VII, upon which the

TCHRA's provisions are modeled.  Lohn v. Morgan Stanley DW, Inc., 652 F.

Supp. 2d 812 (S.D. Tex. 2009); <u>Magallanes v. Penske Logistics, LLC</u>, 570 F.

Supp. 2d 907 (W.D. Tex. 2008).

       In <u>McDonnell Douglas Corp. v. Green</u>, the Supreme Court held that a

plaintiff can establish a prima facie case of racial discrimination under Title VII by

showing that he was (1) a member of a protected class; (2) qualified for the

position held; (3) subject to an adverse employment action; and (4) treated

differently from others similarly situated.  411 U.S. 792, 802 (1973).  In

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), however, the Supreme Court

interpreted the <u>McDonnell Douglas</u> standard to be "an evidentiary standard, not a

pleading requirement."  <u>Id.</u> at 510.  Pointing to "[t]he liberal notice pleading of

Rule 8(a)," the <u>Swierkiewicz</u> Court reversed the Second Circuit, which had held

that a plaintiff must plead a prima facie case of discrimination to survive a motion

to dismiss.  <u>Id.</u> at 515.

       Questions have been raised, however, as to <u>Swierkiewicz</u>'s continued

viability in light of <u>Twombly</u> and <u>Iqbal</u>.  <u>Compare</u> <u>Boykin v. KeyCorp</u>, 521 F.3d

202, 212–13 (2d Cir. 2008) (pre-<u>Iqbal</u> case concluding that <u>Twombly</u> "affirmed the

vitality" of <u>Swierkiewicz</u> ), <u>and</u> <u>Al–Kidd v. Ashcroft</u>, 580 F.3d 949, 974 (9th Cir.

2009) (stating that <u>Twombly</u> "reaffirmed" <u>Swierkiewicz</u>'s  "reject[ion of] a fact

pleading requirement for Title VII employment discrimination"), <u>rev'd on other</u>

<u>grounds sub nom. Ashcroft v. Al-Kidd</u>, —— U.S. ——, 131 S. Ct. 2074 (2011),

with Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (Swierkiewicz

"has been repudiated by both Twombly and Iqbal . . . at least insofar as

[Swierkiewicz] concerns pleading requirements and relies on Conley [v. Gibson,

355 U.S. 41 (1957)].").  The Fifth Circuit has not addressed in a published opinion

the degree to which Swierkiewicz survives Twombly and Iqbal, but it has, in a

number of unpublished opinions, cited to Swierkiewicz with approval.  See, e.g.,

Briscoe v. Jefferson County, 2012 WL 6082694 (5th Cir. Dec. 7, 2012) (slip copy)

(citing Swierkiewicz for the proposition that "courts must take care not to recast

evidentiary standards as pleading requirements"); Flores v. Select Energy Servs.,

LLC, 486 Fed. App'x 429, 432 ("The district court correctly noted that [the

plaintiff] does not have to plead a prima facie case to state a plausible claim of age

or race discrimination.").

Still, the Supreme Court established a "plausibility" standard in

Twombly and Iqbal for assessing whether a complaint's factual allegations support

its legal conclusions, and that standard applies to causation in discrimination

claims.  Thus, although the Complaint need not present "detailed factual

allegations," it must allege sufficient "factual content" from which a court,

informed by its "judicial experience and common sense," could "draw the

reasonable inference," Iqbal, 556 U.S. at 678, 679, that Defendant

"discriminate[d] against [Plaintiff] with respect to [his] compensation, terms,

conditions, or privileges of employment, <u>because of</u> [his] race . . . ."  42

U.S.C. § 2000e–2(a)(1) (emphasis added).  According to the Supreme Court,

"plausibility" occupies that wide space between "possibility" and "probability."

<u>Iqbal</u>, 556 U.S. at 678; <u>see also</u> <u>Gallentine v. Housing Authority of City of Port</u>

<u>Arthur, Tex.</u>, 2013 WL 244651, at *12 (noting that, at the pleading stage, plaintiff

"need only allege enough facts to plausibly suggest that [her] employer

discriminated against [her] due to [her] membership in a protected group")

(alterations in original).  If a reasonable court can draw the necessary inference

from the factual material stated in the complaint, the plausibility standard has been

satisfied.

   Based on the allegations in the Complaint, a reasonable court could

not draw the necessary inference that Defendant discriminated against Plaintiff

with respect to his compensation, terms, conditions, or privileges of employment

because of his race.  First, an "adverse employment action for Title VII

discrimination claims . . . 'include[s] only ultimate employment decisions such as

hiring, granting leave, discharging, promoting, or compensating.'"  <u>McCoy v. City</u>

<u>of Shreveport</u>, 492 F.3d 551, 559 (5th Cir. 2007), quoting <u>Green v. Administrators</u>

<u>of Tulane Educ. Fund</u>, 284 F.3d 642, 657 (5th Cir. 2002).  "Title VII was only

designed to address 'ultimate employment decisions, not to address every decision

made by employers that arguably might have some tangential effect upon those

ultimate decisions.'" Burger v. Central Apartment Mgmt., Inc., 168 F.3d 875, 878

(5th Cir. 1999), quoting Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th

Cir.), cert. denied, 522 U.S. 932 (1997).  To be actionable, therefore, an adverse

employment decision must be a "tangible employment action that constitutes a

significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742,

764 (1998).

Plaintiff alleges that he was "moved to another section of the plant"

after he filed a sexual harassment complaint against a co-worker (doc. # 1 ¶ 19);

that Defendant falsely accused Plaintiff of sexual harassment and concluded that

the harassment had occurred (id. ¶ 21); and that Plaintiff was eventually terminated

(id. ¶ 23).  Plaintiff's reassignment to another section of the plant and the false

sexual harassment claim brought against him are not the type of "adverse

employment actions" sufficient to state a claim under Title VII.  See Pegram v.

Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) ("[A]n employment action that

'does not affect job duties, compensation, or benefits' is not an adverse

employment action.") (quoting Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d

570, 575 (5th Cir.), cert. denied, 540 U.S. 817 (2003)); see also Hunt v. Rapides

Healthcare Sys., LLC, 277 F.3d 757, 769 (5th Cir. 2001) ("[A] shift change,

without more, is not an adverse employment action.").   However, Plaintiff's July

19, 2011 termination does constitute an adverse employment action.  See Ellerth,

524 U.S. at 764 (stating that a "firing" satisfies this element).  In order to state a

claim under Title VII, therefore, Plaintiff must allege sufficient facts to permit a

court to infer that Defendant terminated Plaintiff on July 19, 2011, based on his

race.

This the Court cannot do, because Plaintiff has pleaded no facts to

raise a plausible inference of discriminatory intent on Defendant's part.  For

example, Plaintiff admits that he was absent from work on many occasions without

the PTO to cover those absences (see ¶¶ 13, 15, 18, 23), but he does not allege that

other employees outside his protected class who were also absent were not

terminated.  See, e.g., Okoye v. Univ. of Texas Houston Health Sci. Center, 245

F.3d 507, 515 (5th Cir. 2001) (plaintiff may make a showing of racially disparate

treatment where employees outside his protected class are treated more favorably

in "nearly identical" circumstances).   Indeed, Plaintiff himself states in the

Complaint that he "was terminated for being absent on August 9, 2011, and not

having the PTO time to cover these hours" (doc. # 1 ¶ 23), not because he is white;

and Charge 3 attributes Plaintiff's termination not to his race but to his filing of a

charge of discrimination against Defendant (doc. # 8 Ex. A at 3).

Plaintiff does not allege that he was replaced by someone outside his protected class, that anyone with management responsibilities at Continental made racial slurs or other statements suggestive of racial bias, or even that the (unnamed) Continental manager who fired him was a member of a different race. Cf. Swierkiewicz, 534 U.S. at 514 ("[Plaintiff's] complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination."). Instead, the facts that Plaintiff does allege—that he was repeatedly absent from work without the PTO to cover those absences and that his termination followed his most recent unexcused absence—suggest that Defendant had a legitimate, non-race-based reason for firing Plaintiff. Then, after describing all of the non-race-based reasons for which Plaintiff may have been terminated, the Complaint simply tacks on an allegation of racial bias. (Doc. # 1 ¶¶ 25, 27.) Mere conclusory allegations of bias are not sufficient, however, in the absence of factual allegations suggesting discriminatory intent and where there appear to have been legitimate, non-race-based reasons for Plaintiff's termination. See Iqbal, 556 U.S. at 682 (refusing to infer "individual discrimination" where the allegations in the complaint suggested an "obvious alternative explanation" for the alleged disparate impact of defendants' arrest policy on Arab Muslims); Twombly, 550 U.S. at 567 (alleged parallel conduct was consistent with an unlawful agreement but did not

plausibly suggest an illicit agreement because it was more likely explained by lawful behavior).

In short, while the Complaint makes the legal conclusion that Defendant discriminated against Plaintiff because of his race, the factual allegations fail to support this conclusion and instead appear to be nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Iqbal, 556 U.S. at 678; see also Richards v. JRK Property Holdings, 405 F. App'x. 829, 831 (5th Cir. 2010) (plaintiff's "assertion of racial discrimination is a legal conclusion that the court is not required to accept and does not suffice to prevent a motion to dismiss"); Richards v. JRK Property Holdings, 405 F. App'x 829, 830 (5th Cir. 2010) (affirming dismissal of Title VII discrimination and retaliation claims that were not plausible on their face); Pedreira v. Kentucky Baptist Homes for Children, Inc., 579 F.3d 722, 728 (6th Cir. 2009) (affirming dismissal of religious discrimination claim where plaintiff failed to allege facts plausibly linking her termination to religious beliefs).  These conclusory allegations are insufficient to state a claim under either Title VII or the TCHRA.  Nevertheless, because Plaintiff may be able to cure this pleading deficiency, the Court will dismiss this claim without prejudice and allow Plaintiff an opportunity to amend his Complaint.

2.  <u>Retaliation</u>

Section 704(a) sets forth Title VII's anti-retaliation provision in the following terms:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (emphasis added).  The Fifth Circuit has explained that in order to state a retaliation claim under Title VII, a plaintiff must allege that he: (1) engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link exists between the protected activity and the adverse employment action.  <u>Evans v. City of Houston</u>, 246 F.3d 344 (5th Cir. 2001).  Section 21.055 of the TCHRA is modeled after Title VII's anti-retaliation provision; the elements of a retaliation claim under § 21.055 are the same as under Title VII.  <u>See</u> <u>Matthews v. High Island Indep. Sch. Dist.</u>, 991 F. Supp. 840 (S.D. Tex. 1998) (retaliation provisions of Texas Commission on Human Rights Act are interpreted in accordance with parallel provisions of Title VII); <u>Nairn v. Killeen Indep. Sch. Dist.</u>, 366 S.W.3d 229 (App. 8 Dist. 2012) (to establish prima facie case of retaliation under TCHRA, employee must show that: (1) she engaged in a protected activity; (2) employer took an adverse employment action against her; and (3) it did so because of her participation in the protected activity).  Although

Plaintiff's complaint contains only the slimmest allegations of fact, those allegations are sufficient to state a claim for retaliation under Title VII and the TCHRA.

### i.  Protected Activity

The Complaint alleges, first, that Plaintiff filed a report alleging safety violations with OSHA and three charges with the EEOC (see doc. # 1 ¶¶ 6, 10, 14, 22); and if an employee has "'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII," the employee has engaged in a "protected activity." Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a) (1994)).

### ii.  Adverse Employment Action

As to the second prong, the Complaint alleges that Plaintiff was "moved to another section of the plant" after he filed a sexual harassment complaint against a co-worker (doc. # 1 ¶ 19); that Defendant falsely accused Plaintiff of sexual harassment and concluded that the harassment had occurred (id. ¶ 21); and that Plaintiff was eventually terminated (id. ¶ 23). As explained above, to be actionable, an adverse employment decision must be a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth,

524 U.S. at 764; see also Burlington No. & Santa Fe Ry. v. White, 548 U.S. 53, 57

(2006) (holding that Section 2000e-3(a) "covers those (and only those) employer

actions that would have been materially adverse to a reasonable employee or job

applicant . . . . [T]hat means that the employer's actions must be harmful to the

point that they could well dissuade a reasonable worker from making or supporting

a charge of discrimination."). While Plaintiff's reassignment to another section of

the plant and the allegedly false sexual harassment claim brought against him are

not sufficient to satisfy the "adverse employment action" element, Plaintiff's July

19, 2011 termination is. See Ellerth, 524 U.S. at 764 (stating that a "firing"

satisfies this element).

### iii. Connection Between Protected Activity and Adverse Employment Action

Finally, Plaintiff alleges that Defendant terminated him in retaliation

for the charges that he had filed with the EEOC. (Doc. # 1 ¶¶ 25–26.) According

to the Complaint, Plaintiff was terminated less than a month after he filed Charge 3

with the EEOC. (Id. ¶¶ 22–23.) Again, while Plaintiff's allegations are

threadbare, they are sufficient to raise a plausible inference that Plaintiff was

terminated in retaliation for filing Charge 3. Taking Plaintiff's allegations as true,

it is not clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations. Accordingly, the Court will not dismiss

Plaintiff's claim for retaliatory termination in violation of Title VII and the TCHRA.

II.            Motion for More Definite Statement

Defendant requests that this Court order Plaintiff to provide a more definitive statement of his claims. (Doc. # 7 at 1.) In Particular, Defendant requests that the Court order Plaintiff to submit copies of the charges he filed with the EEOC. (Id. at 8–9.) As explained above, a motion for a more definite statement will be granted only when a pleading is so "barren of specifics," United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 690 n.15 (1973), that the opposing party is unable to respond.

For the reasons given, the Court has determined that any claims based on Charges 1 and 2 are time-barred, so there is no reason to require Plaintiff to submit copies of those charges or to give a more definite statement of claims arising from them.

With regard to Charge 3 and the claims stemming from it, Plaintiff submitted a copy of that charge along with his Response to Defendant's motions (doc. # 8). Moreover, for the reasons given, the Court has determined (1) that the Complaint does state a claim for retaliation in violation of Title VII and the TCHRA and (2) that Plaintiff should be granted leave to amend his Complaint to

state a claim for racial discrimination.  Accordingly, Defendant's Motion for More

Definite Statement is denied as moot.

III.         Leave to Amend

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend]

when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The policy of the federal

rules is to permit liberal amendment to facilitate determination of claims on the

merits and to prevent litigation from becoming a technical exercise in the fine

points of pleading."  Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir.

1981).   Following the Supreme Court's guidance, the Fifth Circuit uses five

factors to determine whether to grant a party leave to amend a complaint: 1) undue

delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by

previous amendments, 4) undue prejudice to the opposing party, and 5) futility of

the amendment.  Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003)

(citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Absent any of these factors,

leave should be "freely given."  Foman, 371 U.S. at 182.

Because none of the five Foman factors applies in this case, the Court

will allow Plaintiff an opportunity to file an amended complaint within thirty (30)

days of the filing of this Order.  Failure to do so and to cure the pleading

deficiencies will result in dismissal with prejudice of the racial discrimination

claims dismissed without prejudice by this Order.

<u>CONCLUSION</u>

For the reasons given, the Court hereby **GRANTS** Defendant's Motion for Partial Dismissal and **DISMISSES WITH PREJUDICE** any claims arising from the allegations in Plaintiff's first and second EEOC Charges (Nos. 846-2009-22464 and 451-2010-01235).

Plaintiff's claims for racial discrimination in violation of Title VII and the Texas Commission on Human Rights Act are **DISMISSED WITHOUT PREJUDICE**, and Plaintiff is granted leave to amend his Complaint within thirty (30) days of the filing of this Order.

**IT IS FURTHER ORDERED** that Defendant's Motion for More Definite Statement is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

**DATED**:  San Antonio, Texas, February 26, 2013.

_____

David Alan Ezra
Senior United States District Judge

42