UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LARRY W. PREWITT, SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | No. SA: 12-CV-582-DAE |
| CONTINENTAL AUTOMOTIVE, | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND STRIKING
PLAINTIFF'S SUR-REPLY

Plaintiff Larry W. Prewitt filed suit against Defendant Continental Automotive alleging violations of the Texas Labor Code and Title VII. On February 4, 2014, the Court heard argument on Defendant's Motion for Summary Judgment (Dkt. # 36). Adam Poncio, Esq., appeared on behalf of Plaintiff, and Santiago T. Alaniz, Esq., represented Defendant. Upon careful consideration of the supporting and opposing memoranda, as well as the parties' arguments at the hearing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment. Additionally, the Court **STRIKES** Plaintiff's sur-reply (Dkt. # 43) from the record.

BACKGROUND

Plaintiff began working for Motorola around November 29, 1999. (Dkt. # 33, "FAC" ¶ 5.)  Defendant bought Motorola in December 2006.  (FAC ¶ 6.)  Between March 13, 2009 and May 11, 2009, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") claiming he was discriminated against because of his national origin, age, and disability ("First Charge").  (Id. ¶ 7.)

On April 24, April 25, May 26, and May 27, 2010, Defendant sent Plaintiff home stating that there was not enough work.  (Id. ¶ 9.)  Defendant gave Plaintiff the choice to either use his paid time off ("PTO") or go home without pay.[1]  (Id.)

On July 12, 2010, Defendant issued a verbal warning to Plaintiff because Plaintiff was absent on July 8, 2010, without having sufficient PTO to cover those hours.  (Id. ¶ 11.)

On July 23, 2010, Plaintiff filed a second charge with the EEOC alleging retaliation ("Second Charge").  (Id. ¶ 12.)

On August 10, 2010, Defendant issued Plaintiff a written warning after he was absent on July 16, 2010, without having sufficient PTO to cover his

---

[1] Plaintiff alleges that on these dates, other workers were given different assignments and not sent home.  (Id. ¶ 10.)  However, Plaintiff has provided no support for this claim.

hours. (Id. ¶ 14.) Then on September 15, 2010, Plaintiff received a second written warning for being absent on September 7, 2010, without sufficient PTO to cover his absence. (Id. ¶ 15.)

On June 21, 2011, Plaintiff filed a sexual discrimination and harassment complaint against a Hispanic female co-worker. (Id. ¶ 16.) Defendant's supervisor, a Hispanic male, moved Plaintiff to work in another location. (Id. ¶ 17.) Plaintiff alleges the co-worker he complained about was not moved. (Id.) Plaintiff also claims that after filing the sexual harassment complaint, Defendant began to give him unwarranted negative performance reviews. (Id. ¶ 18.)

On July 15, 2011, Plaintiff received a 'written counseling' because a former co-worker had filed a sexual harassment complaint against Plaintiff. (Id. ¶ 19.)

On July 19, 2011, Plaintiff filed a third complaint with the EEOC, this time alleging retaliation and discrimination based on national origin ("Third Charge"). (Id. ¶ 20.) Plaintiff later amended the Third Charge to include a claim that Defendant retaliated against Plaintiff in violation of the ADA.[2]

---

[2] The Amendment to the Third Charge states, "I also believe my present termination and the retaliation I suffered were because of my present charges and the prior charges I filed, which is a violation of the Americans with Disabilities Act, as amended and the Texas Labor Code." (Dkt. # 8 at 9.)

On August 17, 2011, Defendant terminated Plaintiff after he was absent on August 9, 2011, without having sufficient PTO to cover the hours. (Id. ¶ 21.) According to Defendant's records, Plaintiff had already accumulated nine Attendance Policy violations prior to August 9, 2011, and had progressed through all available disciplinary steps, making Plaintiff eligible for termination. (Dkt. # 36 at 1.)

Plaintiff filed a complaint with this Court on June 13, 2012, alleging Defendant, through its officers and agents, harassed Plaintiff, retaliated against him, and discriminated against him based on national origin, race, sex, and disability in violation of Title VII, the ADA, and the Texas Labor Code. (Dkt. # 1.) On August 31, 2012, Defendant moved in part to dismiss the complaint and moved for a more definite statement of the claims. (Dkt. # 7.) In this Court's February 26, 2012 Order, the Court found that all of Plaintiff's claims based upon the events covered in the First or Second Charges filed with the EEOC were time-barred, and the Court dismissed those claims. (Id. at 12–14.) However, the Court found that the claims for retaliation and discrimination based on race, arising from events detailed in the Third Charge, were still viable. (Id. at 15, 29.) The Court concluded that although Plaintiff's race discrimination claim was viable, he failed to plead sufficient facts in support. (Dkt. # 29 at 36.) The Court granted Plaintiff leave to amend his complaint to cure the deficiency. (Id.)

Plaintiff subsequently filed his First Amended Complaint asserting claims for discrimination based on race and retaliation in violation of Texas Labor Code and Title VII.  (FAC.)  On September 13, 2013, Defendant moved for summary judgment on all claims.  (Dkt. # 36.)  Plaintiff filed a Response (Dkt. # 41); however, Plaintiff ignored the Local Rules, and his Response far exceeded the permissible length.[3]  Defendant timely replied.  (Dkt. # 42.)  Plaintiff then, without seeking leave of the Court, filed a sur-reply (Dkt. # 43) in response to Defendant's reply.  Pursuant to Local Rule CV-7(f)(1), after the filing of a reply, "[a]bsent leave of court, no further submissions on the motion are allowed."  Because Plaintiff's sur-reply (Dkt. # 43) was filed without leave of the Court, the Court **STRIKES** it from the record.

## LEGAL STANDARD

A court must grant summary judgment when the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the burden then shifts to the non-moving party "to go beyond the pleadings and by

---

[3] Nonetheless, the Court will consider the arguments Plaintiff presented therein.

[his or her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). The non-moving party "must, either by opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing a genuine issue as to a material fact exists." Leghart v. Hauk, 25 F. Supp. 2d 748, 751(1998). "[Non-movants] are required to identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim." Id. "Rule 56 does not require the district court to sift through the record in search of evidence to support a [non-movant's] opposition to summary judgment." Id.

The Court evaluates the evidence in the light most favorable to the non-moving party. Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994). The Court "examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists." Leghart, 25 F.Supp. 2d at 751. However, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the Court must grant summary judgment against that party. Celotex, 477 U.S. at 322.

6

DISCUSSION

Defendant moved for summary judgment on Plaintiff's claim for discrimination based on race and on Plaintiff's claim that Defendant engaged in retaliation.  (Dkt. # 36.)

I.	Race Discrimination Claim

Plaintiff asserts claims for discrimination based on race under both Title VII and the Texas Commission on Human Rights Act ("TCHRA").

The Texas Commission on Human Rights Act provides that it is unlawful for an employer to discharge an individual or discriminate against an individual in any other matter based on race, color, disability, religion, sex, national origin, or age.  Tex. Lab. Code § 21.051.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or nation origin; or to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.

The analysis for claims under either the TCHRA or Title VII is essentially identical. Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403 n.2 (5th cir. 1999). "An employer's decision to terminate an individual's employment violates Title VII when that decision was based on race, whether that race be white or black." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 425 (5th Cir. 2000). When a race discrimination case is presented, but lacks direct evidence of discrimination based on race, the Court applies the analysis articulated in McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802-04 (1973). Byers, 209 F.3d at 425.

Under the McDonnell analysis, a plaintiff must first establish a prima facie case of discrimination based on race. McDonnell, 411 U.S. at 802. To establish a prima facie case of reverse discrimination, a plaintiff must show "(1) that he is a member of a protected group; (2) that he was qualified for the position held; (3) that he was discharged from the position; and (4) that he was replaced by someone outside of the protected group." Byers, 209 F.3d at 426. Courts tailor the fourth element to the specific facts of the case; here, Plaintiff must show he was treated less favorably than others who were similarly situated. McDonnell, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [a

8

plaintiff] is not necessarily applicable in every respect to differing factual situations.").

If a plaintiff establishes a prima facie case, then the burden shifts to the defendant employer to proffer a "legitimate, non-discriminatory reason for the employee's rejection." Byers, 209 F.3d at 425. If the defendant meets its burden, the plaintiff must then prove "by a preponderance of the evidence, that the proffered reason was mere pretext for discrimination." Id.

During oral argument, Plaintiff conceded that it had not put forth sufficient evidence to show that Plaintiff was discriminated against because of his race. The Court agrees that Plaintiff has failed to show a genuine issue of material fact regarding the race discrimination claim. Therefore, the Court **GRANTS** Defendant's motion for summary judgment on the claim of discrimination based on race.

II.     Retaliation Claim

Plaintiff alleges that Defendant retaliated against him in violation of Title VII and the Texas Labor Code[4] because Plaintiff filed the Third Charge with

---

[4] As discussed above, the law governing claims under Title VII and the TCHRA is essentially identical. Shackelford, 190 F.3d at 404. The Court will refer to Title VII in this opinion.

9

the EEOC on July 19, 2011 and because Plaintiff filed an internal sexual harassment complaint. (Dkt. # 33 ¶ 23.) Title VII[5] provides

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

The Court applies the McDonnell burden shifting analysis to claims for retaliation. Kanida v. Gulf Coast Medical Personnel LP, 363 F.3d 568, 575 (5th Cir. 2004). Under this framework, the Plaintiff must first establish a prima facie case of retaliation by establishing "(1) that the employee engaged in a protected activity; (2) that an adverse employment action followed the protected activity; and (3) that there was a causal connection between that adverse action and the protected activity." Galvan v. Caviness Packing Co., Inc., 546 F.Supp. 2d 371, 379 (N.D. Tex. 2008). If Plaintiff establishes a prima facie case, the burden then shifts to Defendant "to rebut the presumption of retaliation by articulating a legitimate, non-retaliatory reason for its decision to terminate the plaintiff." Martinez v. Bohls Bearing Equip. Co., 361 F.Supp. 2d 608, 617 (W.D. Tex. 2005).

---

[5] The Texas Labor Code provides that "[a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code § 21.055.

Finally, if Defendant meets its burden, "Plaintiff must then produce evidence that the proffered reason for discharge is merely a pretext, and that the real reason for [Plaintiff's] termination is an illegal retaliatory animus." Id. (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10 (1981). Plaintiff is then held to a high standard; "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013).

The Fifth Circuit has "consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that 'but for' the discriminatory purpose he would not have been terminated." Septimus v. Univ. of Hous., 399 F.3d 601, 608 (5th Cir. 2005); see Hernandez v. Yellow Transp., Inc., 670 F.3d 644 (5th Cir. 2012). Therefore, to show a defendant's reasons were pretext for unlawful retaliation, a plaintiff must show that but for the protected activity, the adverse employment action would not have occurred. Gollas v. Univ. of Tex. Health Science Ctr. at Hous., 425 F. App'x. 318, 321–22, 324 (5th Cir. 2011) (noting that "but for" causation requires a showing that the protected activity was the "sole motivating factor for the adverse employment action").

11

To survive summary judgment, a plaintiff must show a "conflict in substantial evidence on the ultimate issue of retaliation." Gollas, 425 F. App'x. at 322 (citing Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998)). Evidence is substantial if "it is of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions." Id. In this case, to create a genuine issue of fact that Defendant's reasons are pretext for retaliation, the question is whether Plaintiff has put forth sufficient evidence to raise a genuine issue of material fact as to whether he would not have been terminated but for his filing of charges with the EEOC. See Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 806 (5th Cir. 2007).

A.  The Prima Facie Case

Here, Plaintiff's filing of the Third Complaint with the EEOC and the internal sexual harassment complaint with Defendant were protected activities. Additionally, his termination on August 19, 2011 constituted an adverse employment action. Therefore, Plaintiff has satisfied the first two requirements of a prima facie case.

To satisfy the third requirement of a prima facie case, Plaintiff must demonstrate a causal connection between the adverse employment action and the protected activity. To establish a causal connection, a plaintiff does not need to prove but-for causation. Long v. Eastfield College, 88 F.3d 300, n.4 (5th Cir.

12

1996). "[T]he causal-link element is much less stringent than showing "but for" causation." Gollas, 425 F. App'x at 324.

Here, Plaintiff filed the Third Charge with the EEOC on July 19, 2011, and he was terminated on August 17, 2011. (FAC ¶¶ 20, 21.) Plaintiff argues that the close temporal proximity between his protected activities and his termination supports his claim for retaliation. (Dkt. # 41 at 27.)

When confronted with the question of whether a plaintiff has established a causal connection, courts examine a number of factors including the employee's past disciplinary record, whether the employer followed its typical policies and procedures in terminating the employee, and the temporal distance between the employee's conduct and the discharge. Nowlin v. Resolution Trust Corp., 33 F.3d 498, 508 (5th Cir. 1994). The Fifth Circuit has held that "[t]he timing of the adverse employment action can be a significant, although not necessarily determinative, factor." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995).

The requirement of a prima facie case was not meant to be an onerous one. Plaintiff here has shown that he engaged in protected activities under Title VII, he suffered an adverse employment action, and that these two things were quite close in time. In evaluating these facts with a generous view towards

Plaintiff's allegations, the Court finds that Plaintiff has established his prima facie case for retaliation.

B. <u>Legitimate, Non-Discriminatory Reasons</u>

Because Plaintiff has established his prima facie case, the burden shifts to Defendant to demonstrate "a legitimate, non-discriminatory reason that explains both the adverse action and the timing." <u>Swanson v. Gen. Servs. Admin.</u>, 110 F.3d 1180, 1188 (5th Cir. 1997).

Defendant here has stated that Plaintiff was terminated not because he complained to the EEOC, but rather because he violated Defendant's Attendance Policy. In support of this proffer, Defendant included a copy of the company's Attendance Policy, a declaration from a Human Resources Specialist detailing Plaintiff's infractions, documentation of Plaintiff's absences, Defendant's Disciplinary Policy, documentation of the disciplinary actions taken against Plaintiff, and excerpts from Plaintiff's deposition.

Plaintiff does not appear to dispute that Defendant has an Attendance Policy or that the copy attached as an exhibit to Defendant's Motion for Summary Judgment is accurate. (Dkt. # 41 at 12, 17.) Defendant's attendance policy defines attendance issues as

> ABSENCE – any unplanned time away from work of two (2) hours or more after 40 hours of unplanned/excused PTO has been consumed. For each ABSENCE generated, the employee will be subject to the next level of progressive discipline.

> LATE IN/EARLY OUT – any unplanned time away from work which is less than two (2) hours in duration <u>for hourly and non-exempt salaried employees</u>*, up through nine (9) occasions per calendar year. The tenth (10th) occasion would generate the next level of progressive discipline. After every three additional instances of late in/early out, the next level of progressive discipline may be issued. (*Does not apply to salaried exempt employees).

(Dkt. # 36-1 Ex. A.)

Defendant also provided a copy of its Disciplinary Action Policy.[6] (Dkt. # 36-1 Ex. C.) The Disciplinary Policy details a three-step process: first, an employee will receive a verbal warning; second, the employee will receive a formal first written warning; third, the employee will receive a second written warning. (Dkt. # 36-1 Ex. C.) Once the disciplinary process has progressed through all three steps, the employee may be terminated "at any time for any additional violations or infractions." (<u>Id.</u>) Disciplinary actions "will remain active at the level written for twelve (12) months from the date they were issued." (<u>Id.</u>) The policy states that disciplinary actions for attendance "will build on the most recent, active, progressive step of the process." (<u>Id.</u>)

In support of its motion, Defendant also included a screen-shot listing the attendance events incurred by Plaintiff. (Dkt. 31-1 Ex. B.) This listing indicates that Plaintiff incurred attendance events in 2011 on January 24, February

---

[6] Plaintiff does not dispute the accuracy of this document. (<u>See</u> Dkt. # 41.)

11, February 28, March 13, March 26, March 30, April 19, May 25, July 20, and August 9. (Id.)

Defendant's evidence of Plaintiff's Attendance Policy violations and Defendant's application of its Disciplinary Policy creates a legitimate, non-retaliatory reason for Plaintiff's termination.

C.  Pretext and Causation

The burden then shifts back to Plaintiff to demonstrate that Defendant's reason was mere pretext and that Plaintiff's protected activities, his filing of the Third Charge and the sexual harassment complaint, were the but-for cause of his termination.

Plaintiff contends that he should not have incurred attendance violations because (1) he was forced to use his PTO to avoid going home without pay on four occasions when Defendant claimed there was not enough work, (2) he received approval for one of his absences, and (3) Defendant's record-keeping system was faulty.[7] (See Dkt. # 41.) Plaintiff argues that because the attendance violations used as a basis for his termination were not legitimate, Defendant's reason for terminating him was mere pretext.

---

[7] Plaintiff also argues that his listed Attendance Policy violations should not have counted against him because "employees [were] not made aware of the meaning of an 'event' and therefore, did not know that he had accumulated such events." (Dkt. # 41 at 12.) However, Plaintiff admits in his affidavit that he had been aware of Defendant's Attendance Policy, and therefore had knowledge of what constituted an event. (Dkt. # 41 Ex. A.)

16

1. Forced Use of PTO

Plaintiff first argues that he only lacked sufficient PTO to cover some of his absences because took PTO rather than going home without pay four times in April and May 2010 when Defendant stated there was not enough work. (Dkt. # 41 at 11.)  In Plaintiff's deposition, he admitted that he was given a choice either to use PTO to cover that time or to go home without pay.  (Dkt. # 42-1 Ex. A.)  Although Plaintiff may not have been happy with the options he was provided, he nonetheless made the choice to use his PTO time to cover these work days.  Plaintiff cannot now complain that he was entitled to extra PTO, negating his attendance events.

2. Prior Approval for Time Off

Plaintiff next argues that he had received approval from his supervisor to leave early in August 2011, and therefore, that absence should not have counted as an attendance event.  (Dkt. # 41 Ex. A.)  In his affidavit, Plaintiff specifically names John Taylor as the supervisor who approved Plaintiff's request to leave early in August 2011.  (Id.)  Plaintiff has raised a genuine issue of material fact as to whether he accumulated a sufficient number of violations of Defendant's attendance policy to warrant termination.

3. <u>Faulty Records</u>

Plaintiff additionally claims that he did not actually incur the ten listed Attendance Policy violations.[8] Plaintiff argues that Defendant's record-keeping system is faulty, and therefore, his Attendance Policy violations could not provide legitimate grounds for terminating him. In his affidavit, Plaintiff stated:

> I know of several occasions where the time system did not show me as scanned in and I had to notify my supervisor (William Garcia) and he had to make correction to the time system. So, Continental's time system is flawed and can not [sic] be trusted to show a true verification as to my attendance or tardies.

(Dkt. # 41 Ex A.)

Defendant's evidence of Plaintiff's Attendance Policy violations and the disciplinary action taken pursuant to Defendant's Disciplinary Policy creates a legitimate, non-retaliatory reason for terminating Plaintiff. However, if Defendant's time-keeping system is flawed, it undermines the legitimacy of Defendant's arguments, and raises a genuine issue of material fact as to whether Defendant's stated reason for termination is mere pretext.

---

[8] Plaintiff alleges that he should not have been eligible for termination under Defendant's Disciplinary Policy because his first two disciplinary actions, issued on July 12, 2010 and August 10, 2010, respectively, should not have counted against him because the original action was more than a year old. (<u>Id.</u>) However, Plaintiff's argument is foreclosed by Defendant's Attendance Policy that states that disciplinary actions for attendance "will build on the most recent, active, progressive step of the process." (Dkt. # 36-1 Ex. C.) Therefore, because Plaintiff's most recent disciplinary action was within a year, Plaintiff was eligible for termination.

18

Plaintiff has created a genuine issue of material fact as to whether he did in fact incur ten Attendance Policy violations within a one-year period, and thus, whether Defendant's reason for terminating him was pretextual. Therefore, Defendant's motion for summary judgment on Plaintiff's claim for retaliation is **DENIED WITHOUT PREJUDICE**.

III.   Plaintiff's Other Claims

Plaintiff spends a significant portion of his Response discussing allegations of discrimination based on a disability. However, this Court has already dismissed those claims, and they are no longer part of this suit. (Dkt. # 29.)

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment Plaintiff (Dkt. # 36). Additionally, the Court **STRIKES** Plaintiff's sur-reply (Dkt. # 43) from the record because it was filed without seeking leave of the Court.

IT IS SO ORDERED.

DATED: San Antonio, Texas, February 21, 2014.

_____
David Alan Ezra
Senior United States Distict Judge

19